AMERICAN ORDNANCE CO. v. DRIGGS-SEABURY GUN & AMMUNITION CO.

(Circuit Court, D. Connecticut. February 24, 1900.)

PATENTS—INFRINGEMENT—BREECH-LOADING ORDNANCE.
    The Driggs & Shroeder patent, No. 360,798, for breech-loading ordnance, was not anticipated by the Storm patent, No. 132,740, nor by the Pieri British patent, No. 3,615, and describes a breechblock mechanism for rapid-fire guns both novel and useful; also *held* infringed, as to claim 3, by a gun constructed in accordance with the Driggs-Tasker patent, No. 613,195.

This was a suit in equity for infringement of a patent. On final hearing.

W. H. Singleton, for complainant.
Wilson & Wallis and Wilkinson & Fisher, for defendant.

TOWNSEND, District Judge. Final hearing on usual bill and answer, raising questions of validity and infringement as to the first claim of patent No. 360,798, issued April 5, 1887, to Driggs & Shroeder. Said claim is as follows:

"(1) In a gun in which the breechblock first moves downward in opening, and then swings backward and downward, the combination, with the gun breech provided with grooves in its upper wall, of the pivoted breechblock, A, provided on its upper surface with bands or projections, a, a', adapted to fit in said grooves and hold said breechblock firmly in place, and means for moving the breechblock into and out of said grooves, substantially as described."

There was no patentable novelty in said downward, and backward and downward, movements of the breechblock, or in the construction and arrangement of cam mechanism for moving it in and out of the grooves of said claim. Defendant has copied these constructions in its gun, which is made according to the specifications of the Driggs-Tasker patent.

The combination of the claim in suit is intended for rapid-fire guns weighing, approximately, 1,000 pounds, in which the breechblock mechanism must be so organized as to withstand, when fired, a strain of many tons to the square inch. The specification describes the patented construction, and its function, as follows:

"A represents the breechblock, which is provided on its upper convex surface with bands or projections, a, a', fitting into correspondingly shaped recesses in the upper interior surface of the gun breech, and extending downward below the center line of the chamber. These bands and their grooves firmly hold the breechblock in position, and prevent backward movement of the same during firing."

Counsel for complainant contends as follows: (1) That the patented invention covers the novel construction of "a breechblock supported by what you may call a horseshoe bearing behind it, so that from the top of it to a point well below the center of the bore it was supported against rearward motion by a band in the breech bearing against the breechblock." (2) That, being confronted by the problem of how to get this breechblock down out of the way so as to eject the old and insert the new cartridge, the patentee "organized a resistance by this breechblock which required absolutely no withdraw-

ing, except one equal in amount to the thickness of the horseshoe that bore upon the breech at its thickest point, and he did that by having it of a certain thickness at the top, and then tapering out at the curve on the inside, which curve on the inside or lower part of the bearing surface finally met and vanished into the curve on the outside of the bearing surface of this horseshoe, * * * whereby he had this resistance of the horseshoe for the long sweep over the top and sides of the breechblock, and was able to get that breech-block out of its bearing, so that it could be tipped away by a quick motion by lowering it, not the whole length of the horseshoe, but just the thickness of the bearing at its thickest point," and that this organization was radically new. (3) That the application of this novel bearing involved "the capacity of multiplying those bearings, and of distributing this strain by any number of curves and bands required."

To meet these contentions, counsel for defendant chiefly relies on the Mont Storm Patent, No. 132,740, of 1872, and the Pieri British patent, No. 3,615, of 1885. His expert testifies that United States Nordenfeldt patent, No. 282,008, of 1883, "is more closely allied to the mechanism shown and described in the patent in suit than perhaps any other mechanism of which I am aware." The Storm patent shows a musket with a flat-topped plate, which serves as a breech-block, and which moves downward, and then swings backward in opening, and means for moving the breechblock into and out of engagement with a "jaw or hook" on the top of the breech. It does not show either the "convex surface," or "bands fitting into correspondingly shaped recesses in the upper interior surface of the gun breech," of the patent in suit. Not only is the Storm device essentially different from the invention in suit, but its inoperativeness for large guns is shown by the unsupported overhanging top hook, the absence of all support opposite the bore and at the point of greatest strain, the impossibility of greater length of support against recoil than that of the downward unlocking movement, and a confessedly impracticable thumb lever to hold the breech plate in its closed position.

One of defendant's experts says that, if the Storm patent were applied to a breech-loading gun, he should put it last in point of practical value after Pieri, the patent in suit, and two other patents. The other expert admits that, to so adapt the Storm device to a rapid-fire gun as to make it operative and efficient, he "should think it necessary to devise an entirely different firing mechanism, and to provide more positive means for holding the breechblock in its upper or closed position," and that this would require a little study.

Pieri's British patent has the same means for moving and the same movements of breechblock as Storm. Defendant's counsel says that it is a "complete anticipation." Its experts do not support his contention. Prof. Alger originally, on cross-examination, admitted that the patent did not warrant the curved side pieces shown in the enlarged drawing and model, but that he thought it would be reasonable to infer that any one making such a gun would make said pieces in said shape. Later he testified as follows:

"A. Before answering this question, I wish to modify and add to my answers to your questions 101, 103, 104, 105, and 106. A further careful examination of the drawings of the Pieri patent has convinced me that the dotted lines in figures 1, 2, and 3, and which can be best pointed out in figure 2, being the curved line under the letter 'J,' continued vertically upward towards the letter 'Q,' are intended to show, and 'do show, that the cheek pieces on the sides of the block have the shape which has been given to them in the model and the large drawing of the Pieri mechanism. I was misled into supposing the curved dotted line just under the letter 'J' to be the main spring in the fired position, but, after more careful study of the drawings, I am now convinced that they do show the form of block illustrated in the model and large drawing. A careful examination of figure 3 shows the outline of one of the cheek pieces in dotted line, just as it is shown in the model."

Lieut. Driggs, the joint patentee of the patent in suit, defendant's other expert, says:

"X-Q. 89. Comparing the structure of the Pieri patent with that of the patent in suit, why do you regard the latter as of greater value than the former? A. The Pieri patent I do not think is very well suited for a breech closure, for the reason that I do not think that it is particularly strong; that is to say, that the surfaces engaged I do not think would be sufficient to hold the block in place under the high pressures that are developed in guns." "RD-Q. 107. Please state whether, as far as the supports for the blocks against backward pressure are concerned, you think the Driggs-Tasker design resembles most the Pieri patent or the Driggs patent in suit. A. I don't see how they can well be compared. From the bands alone, the support of the block is nearer the Driggs patent in suit. In the manner of supporting the block below the center of the bore, it is nearer like the Pieri patent; that is to say, the Driggs-Tasker patent, No. 613,195, may be said to have two features in the support of the breechblock, in one of which it is similar to the Driggs patent, No. 360,798, and the other similar to the Pieri British patent, No. 3,615 of 1885."

These admissions confirm the contention of complainant that the Pieri specifications and drawings are indefinite and misleading; that they only show anticipation by the inferences of defendant's expert as to what would be reasonable in carrying out the inventive idea; that they do not disclose any conception of plaintiff's method of holding the block against the action of the discharge; and that the Pieri and the patented constructions are so dissimilar that they cannot be compared. Pieri nowhere shows the plaintiff's corresponding grooves and bands, or the vanishing horseshoe curves, in breech and block. The top of his breech is open, and therefore the breechblock has no support in the space between the upper parts of the breech. The small vertical lugs which support the upper parts of the breechblock above the bore of the gun are insufficient to resist the tremendous strain of a discharge, and therefore are supplemented by an extension of the gun frame at the bottom. This construction prevents the length of the vertical supporting surface from being greater than the vertical sliding motion, as is possible in the patented construction.

Nordenfeldt's United States patent, No. 282,008, of 1880, is not mentioned by defendant's expert Driggs, and is not discussed by defendant's counsel in his brief. Defendant's expert Alger, as already stated, finds its mechanism closely allied to that of the patent in suit. But he admits that Nordenfeldt's mechanism controls the movement, not of a breechblock, but of a wedge, and that he used "a breech recess slotted completely through, and with recoil sup-

ports behind the block," instead of the patented "covered-over grooved breech recess with the transverse grooves cut in it to engage the bands on the top of the breechblock." Nordenfeldt's complicated construction comprised, not the patented breechblock with a downward and backward motion, but one which is rocked on a pivot in the arc of a circle, and which has a wedge on its back. When it is rotated outwardly it withdraws the wedge, and when rotated inwardly it jams the wedge into the breach. It is not in the same class with Pieri, Storm, and the patented invention, in construction or motion. The wedge is not supported across the top. The operation of locking it is a subsequent distinct operation, with an independent device. It is difficult to see how this complex arrangement could be adapted to operate a two-motion block. In this connection, it is significant that Nordenfeldt, in his later British patent of 1886, recognized the disadvantages of this wedge and block contrivance, and, as defendant's expert says, "shows a modification of his breech mechanism, in which the breechblock is in one piece instead of compound, and itself performs the movements of the wedge of his earliest construction."

Has defendant appropriated complainant's invention? Defendant's counsel says: "It is quite true that there is, at first inspection, a strong impression of resemblance between the patent in suit and the defendant's construction." Defendant's expert Alger admits that he does not find the patented bands or projections anywhere in the prior art; that their function is to support the breechblock, when in the closed position, against the force of the discharge of the gun, and that this same function is subserved in defendant's construction of rib and upper part of breechblock. Later he testifies as follows:

"X–Q. 186. In view of the detail examination of the Driggs-Tasker breechblock, its construction, the correlated parts in the breech, and the breechblock operating mechanism, are you not of opinion that this device contains mechanical equivalents, in the shape of duplication or substantial identity of parts or mechanical inversion, of the device contained in the patent in suit? A. To a certain extent that is true, but at the same time I consider the Driggs-Tasker breech mechanism to be an improvement over the mechanism shown in the patent in suit, and to be a patentable improvement."

There are other admissions to the same effect. It is unnecessary to discuss the differentiation of the two devices attempted by defendant's expert. It is not even necessary to the determination of the question of infringement to give to the claim the broad construction to which it is entitled by reason of the novel and meritorious character of the invention.

Whether defendant has improved on the patented construction by providing the lower part of the block with additional bearing surfaces is immaterial. As counsel for complainant says:

"There is the same convex hooded breech, exteriorly of the same substantial appearance. Within this covered hooded breech there are recesses across the top and down the sides, deeper at the middle of the top, and then gradually diminishing and disappearing at a point little below the middle of the bore of the gun. Within the recess is a transverse bolt on which is secured the breechblock. This breechblock has, at one or both sides, a pin or stud entering a cam-shaped recess in the side of the breech, so that, as the block is operated, it is first caused to move downward, and then backward and downward, in

opening, and a reverse action given in closing. On this axial shaft is a cam which engages upon surfaces on the side of the breechblock, and causes it to have the movements stated. In both cases the convex top of the block is provided with bands or curved surfaces following the contour of the convex top of the block, such bands or curved surfaces fitting the corresponding grooves or recesses in the top or sides of the block. In both cases these bands or curved surfaces, fitting into the corresponding recesses of the breech, take the back pressure, and support the block against the force of the discharge of the gun. In both cases the peculiar shape of these bands or curved surfaces permit the block to be opened and closed by a vertical motion, which is short compared with the amount of opening and closing."

The defendant has appropriated substantially the construction, function, and operation of complainant's vanishing horseshoe curves, with their incident novel features of maximum resistance, with minimum withdrawal and capacity of indefinite multiplication. Does its construction infringe this claim? Whether the patentee used the word "convex" in the specification in the sense of a double curvature —that is, curved like a sphere rather than like a cylinder—is not material on this question of infringement. Convexity is not claimed; it is not material; it is not functional. In the specifications of the Driggs-Schroeder patent, No. 378,828, issued nine months later, the patentees did not use the word "convex," but described bands and grooves which are convex in the sense of being curved like a cylinder, and said: "They are substantially the same as those disclosed in our above-named patent." On this point, Driggs, the patentee, now defendant's expert, admits as follows:

"X–Q. 87. Then the difference is a difference of machining. workmanship, costs, etc.? A. Yes. X–Q. 88. In point of function and operation the two devices are similar, in so far as it relates to the motion of the breechblock and the action of the grooves and projections? A. Yes."

He then explains his reasons for said construction, and finally admits as follows:

"RD–Q. 101. Did this peculiar shape of the bands and the longitudinally arched shape of the block constitute a part of the novel details that you said you believed your patent covered after you had discovered the existence of the Storm and Pieri patents, already referred to? A. No; they did not. I never laid any particular stress on the longitudinal curve. It was made just for the same reason that manufacturers or designers put in fillets or curves,—simply because they tend to add a little to the structural strength, or improve the design a little."

The argument of limitation by reason of the file wrapper does not affect the questions herein, because the words added to the claim have no reference to the novel construction infringed by defendant. The claim indicates the invention sought to be protected with sufficient accuracy. That it is for a useful invention is proved by the history of two guns manufactured thereunder, by the subsequent Driggs patents, and by the admissions of Driggs, the patentee. As defendant has appropriated complainant's construction, it is in no position to deny its utility.

In view of these conclusions, the strenuous contention of counsel for complainant that defendant is estopped to deny the validity of the patent in suit by reason of the action of certain of its officers in connection with the assignment of said patent will not be discussed. Let a decree be entered for an injunction and an accounting.