AMERICAN ORDNANCE CO. v. DRIGGS–SEABURY GUN & AMMUNITION CO.

(Circuit Court of Appeals, Second Circuit. February 25, 1902.)

No. 36.

PATENTS—INVENTION—BREECH LOADING ORDNANCE.

The Driggs & Schroeder patent, No. 360,798, for breech-loading ordnance, was not anticipated by the Storm patent, No. 132,740, nor by the Pieri British patent, No. 3,615, and describes a breech-block mechanism

for rapid-fire guns, both novel and useful. Claim 1 also *held* infringed by a gun constructed in accordance with the Driggs-Tasker patent, No. 613,195.

Appeal from the Circuit Court of the United States for the District of Connecticut.

Ernest Wilkinson, for appellant.
W. H. Singleton, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. This is an appeal from a decree adjudging the validity of the first claim of letters patent No. 360,798, granted April 5, 1887, to Driggs & Schroeder, for "breech-loading ordnance," and ordering an injunction against the defendant, and an accounting for infringement. 99 Fed. 996.

Error is assigned of the decision of the court below both upon the issues of the validity of the patent and its infringement.

The patent relates to the class of small cannon known as "rapid-firing, single-shot guns," which are a development of small arms; and the improvements described are designed for equipping the gun with breech-closing mechanism capable of rapid operation, and strong enough to resist the pressure caused by the discharge.

The gun of the patent is one in which the cartridge is inserted at the rear. In such guns the introduction chamber is a rearward prolongation of the powder chamber, and ordinarily is arch-shaped at the upper part, though not necessarily so. The upper part of the chamber of the patent is arch-shaped, and is provided with recesses or grooves extending downward below the center of the chamber. As shown in the drawings, there are two of these grooves, each encircling the upper half of the chamber. The breech block is provided upon its upper convex surface with projections or bands adapted to fit closely into these recesses. The breech block is actuated by mechanism which raises it upward and forward until the bands are brought near the recesses of the chamber, when it is given a further upward direction, which causes the bands to slide into the corresponding recesses. When thus interlocked, the bands and grooves form practically a mortise joint, extending over the top, and around the upper half of the chamber; and the breech block receives a solid support at the top, and as far downward as the recesses extend. The actuating mechanism consists of a horizontal rock shaft, extending through the breech below the bore of the gun, and an operating lever and cam so arranged that, when the shaft is turned in one direction, it will swing the breech block forward, then upward and forward, and upward again, into the locked position, and, when turned in the opposite direction, it will lower the breech block to an unlocked position, and then swing it backward and downward to below the introduction chamber.

The claim is as follows:

"(1) In a gun in which the breech block first moves downward in opening, and then swings backward and downward, the combination, with the gun breech provided with grooves in its upper wall, of the pivoted breech block, A, provided on its upper surface with bands or projections, a a', adapted

to fit in said grooves and hold said breech block firmly in place, and means for moving the breech block into and out of said grooves, substantially as described."

We agree with the court below that there was nothing new in the downward and backward and downward movements of the breech block, or in the construction and arrangement of the mechanism for giving these movements to the breech block, or for moving it in and out of the grooves. If there was any patentable novelty in the combination of the claim, it resided in employing with the other parts the peculiar recesses in the breech and projections upon the breech block which are described in the specification and shown in the drawings.

Of the numerous prior patents introduced in evidence for the purpose of defeating the novelty of the claim, those of one group disclose breech-closing mechanism in guns in which the cartridge is inserted at the rear of the cartridge chamber, and those of another group disclose such mechanism in guns in which the cartridge is inserted at the top of the cartridge chamber.

The most important of the anticipating references is the English patent to Pieri, of 1885. This patent belongs to the second group. If in this patent were disclosed the recesses and projections of the patent in suit, it would be a complete anticipation of the claim. The description and drawings of the patent leave some of the details of the construction of the parts to inference, but that its breech and breech block are provided with recesses and projections which measurably perform the functions of those of the patent in suit is not to be doubted. It shows on either side of the introduction chamber a short groove extending to the upper part of the chamber, but these grooves extend down the sides but a comparatively short distance. Between these recesses the chamber is not provided with an upper wall, the top being uncovered to admit the insertion of the cartridge, and necessarily the recesses do not extend across the upper part of the chamber. The breech block, instead of being rounded transversely at the top, is flat, and has no projections of any kind. It has a stud projection on each of its upper sides, conformed to fit closely into the grooves of the chamber. The studs have only a short vertical bearing, and any increase in the length of the bearing surface would necessitate a long and objectionable movement of the breech block, for locking and releasing it.

We have not referred to the other prior patents introduced by the defendant, partly because the more important of them are fully and satisfactorily considered in the opinion of the court below, and partly because the mechanism of the Pieri patent most closely approximates the construction of the claim in controversy. In none of the prior patents is shown a breech block provided with projections in the form of narrow, raised surfaces, like bands or ribs. In none of them are shown projections adapted to fill grooves extending completely around the upper surface of the chamber.

The real question, as regards the validity of the claim, is whether it involved invention to modify the form of the recesses and projections of the Pieri patent in order to reach the organization of the patent in suit. The improvements of the patent consist in an organization per-

fectly adapted for use with such a breech and breech block as are described therein. They are admirably adapted to release the breech block quickly, and hold it firmly when locked, and they are capable of indefinite multiplication if desired. That they supplied a stronger support for the breech block than the short grooves and studs of the Pieri patent is admitted by one of the experts for the defendant. It is important that the breech block be supported against the strain of discharge at other points than near the top, and so supported as to distribute the strain at all points as equally as is practicable. In order to do this, and to supplement the support given by the short grooves and studs, Pieri, as his patent shows, equipped his breech block with side cheeks at the rear, which bear opposite the bore of the gun when the breech is locked against extensions of the chamber. Although the grooves and bands of the patent in suit perform the same function of the short grooves and lugs of the Pieri patent, they do so more efficiently because the latter, lying wholly above the bore of the gun, do not furnish a sufficiently strong resistance to the discharge pressure. They can be unlocked when the breech block is lowered a distance much less than the length of its vertical supports. Their merit consists in allowing a long vertical bearing, together with a short and quick movement of the breech block in locking and unlocking. If the recesses and projections of the Pieri patent had been employed in a chamber having an upper wall, it would have been a simple, and perhaps an obvious, thing to join them by extending them across the upper wall, and to correspondingly extend the projections on the breech block; yet this would have only afforded a support for the breech block at and near the top. The question is, was there enough in the recesses and projections, as there used, to suggest the conception of the bands and grooves of the patent in suit? We think not, and conclude that these modifications of form and arrangement were new and valuable improvements, and involved sufficient inventive thought to sustain a patent.

We concur in the views expressed in the opinion of the court below upon the question of infringement, and do not deem it necessary to enlarge upon them.

The decree is affirmed, with costs.